IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LACHÉ WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| QUALITY TECHNOLOGY, INCORPORATED, ) | |
| d/b/a QUTECH, ) | |
| ) | |
| **Serve:** Registered Agent ) | |
|   Fusion PPT LLC ) | |
|   8245 Boone Blvd #200 ) | |
|   Vienna, VA 22182 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW the Plaintiff, LaChé Williams ("Ms. Williams" or "Plaintiff"), by counsel, Christopher T. Craig, Esq., Philip C. Krone, Esq., and the law firm of Cook Craig & Francuzenko, PLLC, and hereby files her complaint for damages against the defendant, Quality Technology, Incorporated, d/b/a QuTech Fusion PPT ("Defendant" or "QuTech"). In support thereof Plaintiff states as follows:

### NATURE OF THE CASE

1. This is an action brought under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*, by Plaintiff against Defendant Quality Technology Incorporated for discrimination, failure to accommodate, and retaliation.

### JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Complaint alleges violations the ADA.

1

3. This Court has personal jurisdiction over the Defendant because it performed the acts complained of herein within this district.

4. Plaintiff contacted the Equal Employment Opportunity Commission (the "EEOC") to file a charge of discrimination.

5. Plaintiff provided the EEOC representative a timeline of the events leading up to her termination, information regarding her disability, and information regarding earlier incidences of harassment.

6. Plaintiff relied and the EEOC's actions and representations for the filing of her charge based on the information that she provided.

7. The EEOC completed a Charge of Discrimination for her which was filed on or about November 22, 2015.

8. The Charge was transferred to the Fairfax Office of Human Rights and subsequently transferred back to the EEOC.

9. The EEOC issued Plaintiff a notification of her right-to-sue on November 1, 2018.

10. Venue is proper in this district and in this division by virtue of 28 U.S.C. §1391(b) because, among other reasons, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

11. Ms. Williams is a 38 year old female resident of Washington, D.C.

12. Upon information and belief, Quality Technology, Inc., ("QuTech"), is a Maryland corporation authorized to do business in Virginia with a principal place of business in Virginia located at 6402 Arlington Blvd., Suite 400, Falls Church, Virginia.

## **FACTUAL BACKGROUND**

13. Ms. Williams suffers from General Anxiety Disorder.

14. Ms. Williams' anxiety disorder can cause severe emotional distress including the onset of panic attacks.

15. Ms. Williams' anxiety disorder symptoms can be caused or brought on in the workplace by speaking on the phone.

16. Ms. Williams' anxiety disorder symptoms are on a spectrum and at the onset may result in the inability to focus, speak, and move. However, if the symptoms get progressively worse on the spectrum she can lose the ability to focus, speak, and move entirely.

17. In the spring of 2014, Ms. Williams sought employment with QuTech as a help desk analyst.

18. During the interview process, Ms. Williams inquired as to whether the position required providing assistance on the phone.

19. Ms. Williams was informed that her duties would require to her to communicate through email and a help desk ticket software.

20. Based on this representation, accepted employment with QuTech and on or about April 21, 2014, Ms. Williams began her employment with QuTech as a help desk analyst.

21. Ms. Williams worked out of a location in Falls Church, Virginia.

22. On or about September 1, 2015, the Operations Manager informed the employees that the help desk duties were going to change and that the help desk employees would be required to take phone calls.

23. No information was provided as to when this change would take effect.

24. On or about September 15, 2015, when she arrived at work, Ms. Williams was told to "get on the phones."

25. Ms. Williams told an operations manager, Mr. Harris, that she could not get on the phone due to a medical condition.

26. Mr. Harris inquired as to Ms. Williams' condition but Ms. Williams responded that she believed that information should be shared confidentially with human resources.

27. In response, Mr. Harris laughed and walked away.

28. Then, Ms. Williams disclosed her anxiety disorder to her supervisor, another employee with whom she felt more comfortable sharing this information with.

29. Ms. Williams' supervisor directed her to speak with QuTech's Human Resources office.

30. Ms. Williams reached out to Human Resources, informing them about her anxiety disorder and the issues with the phones.

31. Human Resources directed Ms. Williams to complete QuTech's ADA forms.

32. Ms. Williams sent the forms to her treating provider to complete the necessary sections as required by the forms.

33. On September 18, 2015, an operations manager, Mr. Crispin, summoned Ms. Williams to his office where he had a member of the Human Resources on speaker phone.

34. The Human Resources representative explained that until the Ms. Williams' ADA forms were returned from her treating provider she would have to assist on the phones.

35. Ms. Williams asked if that meant she needed to rush her doctor.

36. The call was going in and out, and it was difficult to understand what the Human Resources representative said in response on the speaker phone.

37. Ms. Williams signaled to Mr. Cripsin to "hold on" and that she would be right back to his office.

38. Ms. Williams went to her desk and grabbed her sweatshirt and phone and then proceeded to go to her car to contact her treating provider about the ADA forms.

39. Her provider told her he was trying to expedite process of completing the ADA forms.

40. When she returned to Mr. Cripsin office the door was closed.

41. Mr. Cripsin then emerged from his office with his cell phone and a different Human Resources representative on the speaker phone.

42. Mr. Cripsin said that he had thought Ms. Williams had left for the day when she had left his office to contact her treating provider because she had taken her bag.

43. Ms. Williams responded that she went to her car to follow up with her doctor in private and that she takes her bag with her when she is not in the vicinity of her desk.

44. The Human Resource representative began to repeat similar statements that were stated by the first representative.

45. Ms. Williams explained that she was feeling extremely rushed and then felt compelled to disclose her anxiety disorder while Mr. Cripsin was present.

46. Ms. Williams began feeling symptomatic – feeling embarrassed, hopeless, and unable to focus – and told the Human Resource representative that she was going back to her desk and that she would email her.

47. Once at her desk, Ms. Williams was unable to login in her to computer, receiving a notice that her account was disabled.

48. Ms. Williams logged an IT ticket from a co-workers computer and finished her work day before going home for the weekend.

49. On or about September 21, 2015, the following Monday, QuTech terminated Ms. Williams.

50. Throughout Ms. William's employment with QuTech she was able to perform her duties as a help desk analyst and was doing so at a satisfactory level.

## COUNT I
### (ADA - Discrimination)

51. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Complaint as if fully set forth herein.

52. Plaintiff is an individual with a disability as a result of her anxiety disorder.

53. Plaintiff started the process of requesting an accommodation for her anxiety disorder.

54. After Ms. Williams started the process, Defendant terminated Plaintiff because of her disability.

55. As a result of Defendant's discrimination, Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, anxiety, incurred medical expenses, and past and future wage loss

## COUNT II
### (ADA – Failure to Accommodate)

56. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Complaint as if fully set forth herein.

57. Plaintiff is an individual with a disability as a result of her anxiety disorder.

58. Defendant had actual and constructive knowledge of Plaintiff's disability as a result of her disclosing such information to her supervisors as well as Defendant's Human Resource's department.

59. Plaintiff attempted engaged Human Resources about requesting an accommodation and was provided the necessary forms.

60. After a discussion regarding the timeline for having her treating provider submit the executed forms, Defendant terminated Ms. Williams' without any discussion regarding Plaintiff' concerns or providing her a reasonable amount time to return the completed ADA forms.

61. As a result of Defendant's discrimination, Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, anxiety, incurred medical expenses, and past and future wage loss.

## COUNT III
### (ADA – Retaliation)

62. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Complaint as if fully set forth herein.

63. Plaintiff engaged in protected activity under Section 503 of the ADA when she informed her supervisor and Human Resources of her anxiety disorder and her desire to request an accommodation for her anxiety disorder.

64. Plaintiff suffered an adverse action subsequent to engaging in protected conduct when Defendant terminated her the Monday following a Friday discussion regarding her ADA forms.

65. As a result of Defendant's retaliation, Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, anxiety, incurred medical expenses, and past and future wage loss.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, LaChe' Williams, demands judgment against the defendant, Quality Technology, as follows:

(a) Lost wages in excess of $75,000.00 or in an amount to be proven at trial against;

(b) $200,000.00 in compensatory damages for violations of the ADA;

(c) $200,000.00 in punitive damages for violations of the ADA;

(d) Plaintiff's attorneys' fees and court costs as provided by statute; and

(e) Pre- and post-judgment interest; and

(f) All other further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

_____
Christopher T. Craig, VSB 36983
Philip C. Krone, VSB 87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: (703) 865-7480
Fax: (703) 434-3510
ccraig@cookcraig.com
pkrone@cookcraig.com
*Counsel for Plaintiff*